```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THOMAS E. PEREZ, Secretary of Labor,
United States Department of Labor,

                            Plaintiff,              15-CV-004655 (JCF)

            -against-

MANNA 2nd AVENUE LLC d/b/a GINA LA
FORNARINA, MANNA MADISON AVENUE LLC
d/b/a GINA LA FORNARINA, MANNA AMSTERDAM
AVENUE LLC d/b/a GINA LA FORNARINA, MANNA
LEXINGTON AVENUE LLC d/b/a GINA LA FORNARINA,
and PAOLA PEDRIGNANI, Individually and as Owner,

                            Defendants.
------------------------------------------------------------------X
```

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Stephen D. Hans, Esq.
STEPHEN D. HANS & ASSOCIATES, P.C.
45-18 Court Square, Suite 403
Long Island City, New York 11101
Tel: 718.275.6700
Fax: 718.275.6704
*Attorneys for the Defendants*

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................. 5

II. STATEMENT OF FACTS ....................................................................... 5

III. STANDARD FOR SUMMARY JUDGMENT ....................................... 5

IV. ARGUMENT .......................................................................................... 6

PIZZA CHEFS WERE EXEMPT FROM RECEIVING OVERTIME
COMPENSATION UNDER THE EXECUTIVE EXEMPTION
OF THE FLSA ............................................................................................. 6

1. The Pizza Chefs' Salary Exceeded $455.00 Per Week ......................... 7

2. The Pizza Chefs' Primary Duty was the Management
of the Kitchen and Pizza Station ................................................................ 8

3. The Pizza Chefs Customarily and Regularly Directed the Work of Two or More
Employees ................................................................................................. 11

4. Pizza Chefs Had the Authority to Hire or Fire Other Employees ........ 12

V. CONCLUSION ........................................................................................ 13

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)......................................................................................6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................................5

*Coberly v Christus Health*,
829 F. Supp. 2d 521 (N.D. Tex. 2011) ......................................................10

*Darveau v. Detecon, Inc.*,
515 F.3d 334 (4th Cir. 2008) .......................................................................7

*Kahn v. Superior Chicken & Ribs, Inc.*,
331 F. Supp. 2d 115 (E.D.N.Y. 2004) ......................................................10

*Karropoulos v. Soup du Jour, Ltd.*,
128 F. Supp. 3d 518 (E.D.N.Y. 2015) ........................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986) ....................................................................................6

*Scherer v. Compass Group USA, Inc.*,
340 F. Supp. 2d 942 (W.D. Wisc. 2004) ..................................................10

*Scott v. SSP Am., Inc.*,
2011 U.S. Dist. LEXIS 32819 (E.D.N.Y. 2011).........................................9

**STATUTES RULES AND REGULATIONS**

29 C.F.R. § 541.100(a)............................................................................6, 12

29 C.F.R. § 541.102 .....................................................................................8

29 C.F.R. § 541.105 ...................................................................................12

29 C.F.R. § 541.602(a).................................................................................7

29 C.F.R. § 541.700 ..................................................................................8, 9

29 C.F.R. § 541.701 ...................................................................................12

29 U.S.C. § 207(a)(1)...................................................................................6

29 U.S.C. § 213(a)(1) ................................................................................................6

Fed. R. Civ. P. 56 ....................................................................................................5

**OTHER SOURCES**

Bureau of Labor Statistics, U.S. Dep't of Labor,
*Occupational Outlook Handbook*, (2016-17) ........................................................8

## I. PRELIMINARY STATEMENT

Defendants MANNA 2nd AVENUE LLC d/b/a GINA LA FORNARINA, MANNA MADISON AVENUE LLC d/b/a GINA LA FORNARINA, MANNA AMSTERDAM AVENUE LLC d/b/a GINA LA FORNARINA, MANNA LEXINGTON AVENUE LLC d/b/a GINA LA FORNARINA, and PAOLA PEDRIGNANI (collectively "Defendants" or "Gina La Fornarina"), by and through their counsel, respectfully submit this Memorandum of Law in support of their Motion for Partial Summary Judgment.

The Gina La Fornarina restaurants are full service Italian restaurants with a focus on producing spectacular pizza and other Italian recipes. Each restaurant location employs a kitchen chef and pizza chef of equal rank and with equal management authority. For the reasons discussed below, the pizza chefs were appropriately classified as bona fide executive employees and thus exempt from receiving overtime compensation under the Fair Labor Standards Act ("FLSA").

## II. STATEMENT OF FACTS

For the purposes of this motion, Defendants respectfully refer the Court to the separate Rule 56.1 Statement ("56.1") submitted concurrently with this motion as well as the accompanying Declaration of Stephen D. Hans, Esq., dated August 15, 2016 also with exhibits.

## III. STANDARD FOR SUMMARY JUDGMENT

A moving party is entitled to summary judgment, or partial summary judgment, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material facts exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable,

5

or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Therefore, to defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Here, the facts demonstrate that the Defendants are entitled to summary judgment as a matter of law.

## IV. ARGUMENT

### PIZZA CHEFS WERE EXEMPT FROM RECEIVING OVERTIME COMPENSATION UNDER THE EXECUTIVE EXEMPTION OF THE FLSA

The FLSA generally requires that employees who work in excess of 40 hours a week be compensated at an overtime rate of one-and-one-half times their regular rate of pay. 29 U.S.C. § 207(a)(1). However, the FLSA exempts "any employee employed in a bona fide executive, administrative, or professional capacity" from this overtime requirement. 29 U.S.C. § 213(a)(1).

Under the FLSA, an employee qualifies for the executive exemption if: (1) he is "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) his "primary duty is management of the enterprise . . . or of a customarily recognized department or subdivision thereof"; (3) he "customarily and regularly directs the work of two or more other employees"; and (4) he has the "authority to hire or fire other employees" or his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a). Based on the below, it is clear that the pizza chefs meet these requirements to qualify as exempt executives under the FLSA.

1. **The Pizza Chefs' Salary Exceeded $455.00 Per Week**

There is no genuine dispute that the pizza chefs met, and exceeded, the salary threshold required of an executive employee. As a general rule, "[a]n employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a).

Here, the pizza chefs were paid a weekly salary of $900-$1,000. 56.1 at ¶ 16. This amount greatly exceeds the $455 per week requirement. The Courts have noted that "[a]lthough salary alone is not dispositive under the FLSA . . . the FLSA was meant to protect low paid rank and file employees and that [h]igher earning employees . . . are more likely to be bona fide managerial employees." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 338 (4th Cir. 2008) (internal citations omitted).

That same logic applies here. When Ms. Pedrignani, the owner of the Gina La Fornarina restaurants, was asked how she decided whether employees should be paid on an hourly or salary basis she responded:

> Because they are managers, because they have make decisions, because they're executive, because they can take decision, and this is important for me to clarify because, you know, at all times when I'm in a restaurant, there are four people that can make decision. It's the chef, it's the pizza chef, it's Igor, and it's Alfredo. These people are the one that have to help me in one way or the other to manage the restaurant. Now, that's how we define who can do this task with me, and that's why they're paid salary.

(Ex. D at 153).

Additionally, the pizza chefs' salary was in line with the median salaries of other chefs and head cooks. According to the Bureau of Labor Statistics, the 2015 median pay for chefs and heads cooks was $41,500 per year. Bureau of Labor Statistics, U.S. Dep't of Labor, *Occupational Outlook Handbook,* (2016-17), http://www.bls.gov/ooh/food-preparation-and-serving/chefs-and-head-cooks.htm. However, the median pay for cooks was $21,720 per year, (*id.* at http://www.bls.gov/ooh/food-preparation-and-serving/cooks.htm), and the median pay for food preparation workers was $20,180 per year. *Id.* at http://www.bls.gov/ooh/food-preparation-and-serving/food-preparation-workers.htm. Therefore, the pizza chefs' average annual salary of $52,000 supports the fact that they were properly classified as exempt chefs, and that they were clearly functioning above the pay grade of non-exempt cooks or sous chefs.

### 2. The Pizza Chefs' Primary Duty was the Management of the Kitchen and Pizza Station

Under the second prong of the executive exemption test, the individual's primary duty must be the performance of managerial work. The DOL regulations defines "management" to include:

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used . . . [and] apportioning the work among the employees.

29 C.F.R. § 541.102.

The regulations then define the term primary duty as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). In determining an employee's primary duty, the courts should emphasize "the character of the employee's job as a whole." *Id.* The courts may also consider specific factors including the amount of time the

8

whole." *Id.* The courts may also consider specific factors including the amount of time the employee spent performing managerial duties, the relative importance of the managerial duties as compared to his other duties, his relative freedom from direct supervision, and the relationship between his salary and the wages paid to other employees performing similar non-exempt work. *Id.*

However, while the amount of time spent performing managerial duties may be useful in determining an employee's primary duty, "[t]ime alone . . . is not the sole test and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work." 29 C.F.R. § 541.700(b). This is particularly true when non-management tasks can be performed simultaneously with other management duties. *Scott v. SSP Am., Inc.*, 2011 U.S. Dist. LEXIS 32819, at *33 (E.D.N.Y. 2011) ("In deciding an employee's primary duty, although the percentage of time spent performing nonexempt work is an important consideration, it is not dispositive, particularly when non-management duties are performed simultaneous to the supervision of employees or other management tasks and other factors support a finding that the employee's primary duty is managerial.") (citation and internal quotation marks omitted).

Under this analysis, federal courts have found that a chef's primary duty is management if the "chef's management duties were more important to his employer than his cooking duties." *Karropoulos v. Soup du Jour, Ltd.*, 128 F. Supp. 3d 518, 531 (E.D.N.Y. 2015). This principal also applied in *Scott v. SSP Am., Inc.*, 2011 U.S. Dist. LEXIS 32819 (E.D.N.Y. Mar. 29, 2011), where the plaintiff was a unit manager of a group of restaurants, cafes and bars in the JFK International Airport. The plaintiff testified that although "she spent on average 90% of her time performing the nonexempt tasks of hourly workers, such as working the cash register, she continued to supervise her subordinates by 'multi task[ing].'" *Id.* at 26-27. Based on this

9

testimony, the Court found that the plaintiff's primary duty was management since "it is clear that Plaintiff's management duties were more important to the success of Defendant's business than her other duties." *Id.* at 27.

The courts reached a similar result in *Scherer v. Compass Group USA, Inc.*, 340 F. Supp. 2d 942 (W.D. Wisc. 2004). In that case, the plaintiff was an executive chef who spent about 75% of his workdays cooking, and did not have the authority to promote, discipline or fire employees. *Id.* at 946, 953. Nonetheless, the Court held that the plaintiff was an executive employee whose primary duty was management of the kitchen. In reaching this conclusion the court noted that "his responsibility for planning menus, overseeing the amount and manner of food production, maintaining appropriate food supplies, overseeing staff performance and productivity and drafting daily production sheets was of **far greater importance** than his responsibility for assisting with food preparation." *Id.* at 953 (emphasis added).

Likewise, in analyzing the plaintiff's duties in *Coberly v Christus Health*, 829 F. Supp. 2d 521, 529-30 (N.D. Tex. 2011), the Court held that the senior chef was an exempt employee where his responsibilities in managing the kitchen included "planning meals, procuring food supplies and kitchen equipment, production of meals, directing and supervising the operation of the kitchen production staff and work flow of the kitchen personnel, overseeing the food service workers, interviewing and recommending the hiring and firing of food service workers, and participating in the performance management process for the food service workers." *See also Kahn v. Superior Chicken & Ribs, Inc.*, 331 F. Supp. 2d 115 (E.D.N.Y. 2004) (finding that the plaintiff, who worked in a fast food restaurant, qualified as an executive employee since he had little supervision, was responsible for taking inventory, wore a different uniform than other employees, and had the power to supervise, make work schedules, and hire and fire employees).

10

In the instant case, the pizza chefs' primary duty was always management of the kitchen and pizza station, and they were authorized to make management decisions for the good of the restaurant on their own—without needing permission from the owner. 56.1 at ¶ 5. For example, the pizza chef, along with the chef, was responsible for ensuring that the kitchen had appropriate food supplies, and assisted in the ordering of food and other kitchen products and necessities. 56.1 at ¶ 7. The pizza chef also attended weekly management meetings with the owner, managers, and chef. 56.1 at ¶ 8. At these meetings they would discuss food quality, recipes, equipment problems, and new kitchen hires. 56.1 at ¶ 8. They would also "discuss any open issues such as personnel changes; discuss restaurant and food planning, i.e. products that need to be purchased; [and] make decisions on presentment of food and general operation issues." 56.1 at ¶ 8.

The pizza chef was also tasked with supervising the kitchen staff. In doing so, the pizza chef had the authority to determine the weekly schedule for the kitchen employees, make decisions regarding overtime, and approve of days off. 56.1 at ¶ 11. The pizza chef was also responsible for finding replacements for absent employees, handling disciplinary issues, and distributing paychecks. 56.1 at ¶¶ 7, 10-11. Furthermore, the pizza chef also had the independent authority to hire or fire employees. 56.1 at ¶ 12. In hiring an employee the pizza chef was authorized to make decisions regarding pay rate, and also shared a responsibility for training the new hire. 56.1 at ¶ 12-15.

### 3. The Pizza Chefs Customarily and Regularly Directed the Work of Two or More Employees

The pizza chefs "customarily and regularly" directed the work of two or more employees. According to the DOL Regulations, "[t]he phrase 'customarily and regularly' means a frequency

that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701.

Here, the kitchen staff included the pizza chef, chef, salad maker, dishwasher, prep cook and trainees. 56.1 at ¶ 9. At all times the pizza chef supervised at least two employees, the dishwasher and prep cook, by overseeing their performance and productivity. *Id.* Additionally, as discussed *supra*, the pizza chefs' supervisory authority included the responsibility of determining employees' schedules, overtime, and days off, as well as training new employees and handling disciplinary issues. 56.1 at ¶¶ 10, 14. Thus, the pizza chefs satisfy the third prong of the test for executive employees.

### 4. Pizza Chefs Had the Authority to Hire or Fire Other Employees

The fourth and final prong of the FLSA's executive exemption test is whether the employee "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4). Further, "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105.

In the instant case, it is clear that the pizza chefs were authorized to make personnel decisions and suggestions. The pizza chefs' had independent authority in regards to decisions of hiring or firing employees. 56.1 at ¶ 12. For example, Cesar, a pizza chef had hired another pizza chef for the opening of a new Gina La Fornarina location. *Id.* In hiring a new employee, both the pizza chef and chef had the authority to decide on his pay rate, and also had the responsibility of

training him. 56.1 at ¶ 13-14. The pizza chef also had the authority to fire kitchen staff without prior approval from the chef or the owner. 56.1 at ¶ 15.

## V. CONCLUSION

The pizza chefs were exempt employees under the FLSA's executive exemption and were thus not entitled to overtime compensation. For the foregoing reasons, the Defendant's motion for partial summary judgment should be granted in its entirety.

Dated: Long Island City, New York
       August 15, 2016

                              STEPHEN D. HANS & ASSOCIATES, P.C.

                              By:___/s/_____
                                 Stephen D. Hans (SH-0798)
                                 45-18 Court Square, Suite 403
                                 Long Island City, New York 11101
                                 Tel: 718.275.6700
                                 Fax: 718.275.6704
                                 Email: shans@hansassociates.com
                                 *Attorneys for the Defendants*