UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -:

THOMAS E. PEREZ, Secretary of      :     15 Civ. 4655 (JCF)
Labor, United States Department    :
of Labor,                          :       MEMORANDUM
                                   :     AND  ORDER
              Plaintiff,           :
                                   :
   - against -                     :
                                   :
MANNA 2ND AVENUE LLC dba GINA LA   :
FORNARINA, MANNA MADISON AVENUE    :     ┌─────────────────────────────┐
LLC dba GINA LA FORNARINA, MANNA   :     │ USDS SDNY                   │
AMSTERDAM AVENUE LLC dba GINA LA    :     │ DOCUMENT                    │
FORNARINA, MANNA LEXINGTON AVENUE  :     │ ELECTRONICALLY FILED        │
LLC dba GINA LA FORNARINA, and     :     │ DOC #: _____    │
PAOLA PEDRIGNANI, Individually and :     │ DATE FILED: 2-/28/17        │
as Owner,                          :     └─────────────────────────────┘
                                   :
              Defendants.          :

- - - - - - - - - - - - - - - - - - -:

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The United States Secretary of Labor, Thomas E. Perez (the "Secretary"), brings this Fair Labor Standards Act ("FLSA") action against Manna 2nd Avenue LLC, Manna Madison Avenue LLC, Manna Amsterdam Avenue LLC, Manna Lexington Avenue LLC, and Paola Pedrignani for violations of the FLSA's overtime, minimum wage, and recordkeeping provisions. The parties have cross-moved for partial summary judgment. The plaintiff seeks judgment on his overtime claims for the period June 16, 2013, to November 18, 2015,[1] including liquidated damages and a determination of the

_____

[1] The plaintiff does not move on his June 2012 to June 2013 wage claims, reserving those claims for trial. (The Secretary of

defendants' joint and several liability.  Both parties seek a decision on the viability of the defendants' executive exemption defense.  For the following reasons, the defendants' motion is denied, and the plaintiff's motion is granted in part and denied in part.

<u>Background</u>

Ms. Pedrignani is the owner of the four corporate defendants, which operate as the Italian pizza restaurant Gina La Fornarina at separate locations across Manhattan.  (Stipulation dated Aug. 24, 2016 ("Stip."), attached as Exh. 1 to Declaration of Amy Tai dated Sept. 16, 2016 ("9/16/16 Tai Decl."), ¶¶ 6-7; Defendants' Rule 56.1 Statement ("Def. 56.1 Statement"), ¶¶ 1-2).  Ms. Pedrignani has primary managerial control over the restaurants.  (Stip., ¶ 6; Def. 56.1 Statement, ¶ 8).

During the relevant period, the defendants jointly employed a variety of employees, including kitchen chefs, pizza chefs, dishwashers, salad makers, prep cooks, trainees, servers, bussers, runners, porters, general captains, hosts, baristas, and delivery people.  (Amended Complaint, ¶¶ 4-7; Stip., ¶¶ 5, 10-11; The Secretary of Labor's Rule 56.1 Statement in Support of His Motion for Partial Summary Judgment ("Pl. 56.1 Statement"), ¶ 31; Def. 56.1 Statement, ¶¶ 3, 5, 9).  Some of the employees worked for

Labor's Memorandum of Law in Support of His Motion for Partial Summary Judgment ("Pl. Memo.") at 5.

more than one of the restaurants in the same week.  (Stip., ¶ 11).
The pizza chefs were usually paid a fixed salary.  (Def. 56.1
Statement, ¶ 16).

The Department of Labor began an investigation of the
defendants in 2013 for alleged violations of the FLSA's overtime,
minimum wage, and notice provisions.  (Def. 56.1 Statement, ¶ 17).
After the parties were unable to resolve the dispute, the Secretary
filed this action.  (Def. 56.1 Statement, ¶¶ 18-21).  On summary
judgment, the plaintiff contends that the defendants owe overtime
wages to the above-mentioned kitchen and dining room employees
from June 16, 2013, to November 18, 2015, because the defendants
did not (1) aggregate hours worked at different locations, (2)
combine hours worked at different positions or pay rates, and (3)
properly calculate overtime rates when employees were paid a fixed
sum.  The defendants argue that the pizza chefs are exempt from
the overtime pay rule under the FLSA's executive exemption.

Discussion

    A.   Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a court
will "grant summary judgment if the movant shows that there is no
genuine issue as to any material fact and the movant is entitled
to judgment as a matter of law."  Fed. R. Civ. P. 56(a); accord
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving
party bears the initial burden of identifying "the absence of a

genuine issue of material fact." Celotex, 477 U.S. at 323.  The opposing party then must come forward with specific materials establishing the existence of a genuine dispute.  Id. at 324. Where the nonmoving party fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted.  Id. at 322-23.  Where "the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can 'point to an absence of evidence to support an essential element of the nonmoving party's claim.'"  Gemmink v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015) (quoting Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995)).

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Smith v. Barnesandnoble.com, LLC, 839 F.3d 163, 166 (2d Cir. 2016).  However, the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249, and may grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative, id. at 249-50.  When evaluating cross-motions for summary judgment, the

court reviews each party's motion on its own merits, and draws all reasonable inferences against the party whose motion is under consideration.  Morales v. Quintel Entertainment, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

   B.   Defendants' Failure to Comply with Local Rule 56.1

   Local Civil Rule 56.1(a) of the Southern and Eastern Districts of New York requires that a party moving for summary judgment annex "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  The opposing party, in response, must "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civil Rule 56.1(b).

   Although the defendants provided a Rule 56.1(a) statement for their own summary judgment motion, they failed to controvert the plaintiff's Rule 56.1(a) statement.  Accordingly, the facts contained in the plaintiff's statement could be deemed admitted.  See Local Civil Rule 56.1(c); Dejana Industries, Inc. v. Village of Manorhaven, No. 12 CV 5140, 2015 WL 1275474, at *3 (E.D.N.Y. March 18, 2015).  However, the "court has broad discretion to determine whether to overlook a party's failure to comply with

local court rules . . . [and] may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (quoting Monahan v. New York City Department of Corrections, 214 F.3d 275, 292 (2d Cir. 2000)). Because there is a preference for deciding cases on the merits, I will conduct an "assiduous review" of the record where necessary. See Dejana Industries, 2015 WL 1275474, at *3; Lopez v. Echebia, 693 F. Supp. 2d 381, 386 (S.D.N.Y. 2010).

    C.   Defendants' Joint Liability as Employers

The plaintiff contends that the defendants jointly employed their employees and are jointly and severally liable. An employee is jointly employed "if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s)." 29 C.F.R. § 791.2(a). Whether a joint employment arrangement exists is to be "resolved from the totality of the evidence." Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 149 (2d Cir. 2008). If two employers jointly employ an employee, then

> all of the employee's work for all of the joint employers
> during the workweek is considered as one employment for
> purposes of the Act. In this event, all joint employers
> are responsible, both individually and jointly, for
> compliance with all of the applicable provisions of the
> act, including the overtime provisions, with respect to
> the entire employment for the particular workweek.

29 C.F.R. § 791.2(a); see Barfield, 537 F.3d at 141; Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003).

The parties stipulated, "Together, Manna 2nd Avenue LLC, Manna Madison Avenue LLC, Manna Amsterdam Avenue LLC, Manna Lexington Avenue LLC, and Paola Pedrignani jointly employed their employees." (Stip., ¶ 10). They also agreed that Ms. Pedrignani centrally managed the corporate defendants and that the business activities of the restaurants were related. (Stip., ¶¶ 6, 8-9). Thus, the defendants jointly employed the employees and are jointly and severally liable under the FLSA for any damages award. See Fermin v. Las Delicias Peruanas Restaurant, Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).

D.   Pizza Chefs

Both parties seek judgment with respect to the defendants' affirmative defense that the pizza chefs are subject to the FLSA's executive exemption. The FLSA's overtime pay rule does not "apply with respect to . . . any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The regulations defining the FLSA's executive exemption provide that

> [t]he term "employee employed in a bona fide executive capacity" . . . shall mean any employee:
>
> > (1) Compensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;

7

>    (2) Whose primary duty is management of the
>    enterprise in which the employee is employed
>    or of a customarily recognized department or
>    subdivision thereof;
>
>    (3) Who customarily and regularly directs the
>    work of two or more other employees; and
>
>    (4) Who has the authority to hire or fire other
>    employees    or    whose    suggestions    and
>    recommendations  as  to  the  hiring,  firing,
>    advancement, promotion or any other change of
>    status of other employees are given particular
>    weight.

29 C.F.R. § 541.100(a); accord Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 559-60 (2d Cir. 2012). "The exemption question . . . is a mixed question of law and fact.  The question of how the employees spent their working time is a question of fact.  The question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law." Pippins v. KPMG LLP, 759 F.3d 235, 239 (2d Cir. 2014) (quoting Ramos, 687 F.3d at 558).  The employer bears the burden of showing that an employee is exempt, Ramos, 687 F.3d at 558, a showing that requires that all four prongs of the test be met, Solis v. SCA Restaurant Corp., 938 F. Supp. 2d 380, 396 (E.D.N.Y. 2013); see 29 C.F.R. § 541.100(a).

The parties do not clearly state which employees qualify as pizza chefs.  The plaintiff appears to consider Cesar Padilla, Antonio Rojas, and Joffre Siguencia to be the only relevant individuals because they were the only salaried pizza chefs.  (Pl.

8

Memo. at 18; Pl. 56.1 Statement, ¶ 74; Declaration of Elizabeth Perez dated Oct. 14, 2016 ("10/14/16 Perez Decl."), ¶¶ 6-8). It is also clear from the plaintiff's June 16, 2013, to November 18, 2015 payroll records that there are other employees who were in non-salaried "pizza" positions.[2] (Back Wages Owed at 58, 68-70, 87, 97, 121-24). However, it is not clear whether the defendants employed other pizza chefs before June 16, 2013.[3] I will therefore consider the status of Mr. Padilla, Mr. Rojas, and Mr. Siguencia. I will also consider the status of other employees with "pizza" positions from June 16, 2013, to November 18, 2015, but I will not rule on whether other pizza chefs may be exempt prior to that time.

### 1.   Salaried Pizza Chefs

It is clear that Mr. Padilla, Mr. Rojas, and Mr. Siguencia are pizza chefs whose salaries satisfy the first prong of the

---

[2] Excluding Mr. Padilla, Mr. Rojas, and Mr. Siguencia, there are employees whose positions are categorized as "Pizza Chef" or just "Pizza" in the plaintiff's submissions, and these other employees were either only classified as "Pizza Chefs" for a few weeks or had a "Pizza" position in combination with another position (such as "barista"). (Detailed Summary of Back Wages Owed for June 16, 2013 – November 18, 2015 ("Back Wages Owed"), attached as Exh. B to Declaration of Elizabeth Perez dated Sept. 16, 2016 ("9/16/16 Perez Decl."), at 58, 68-70, 87, 97, 121-24). For example, Miguel Velasquez Martinez was in an hourly "Pizza" position starting in 2014 and also worked as a porter and deliveryman. (Back Wages Owed at 121-24; Declaration of Miguel Velasquez Martinez dated Oct. 12, 2016 ("Martinez Decl."), ¶ 10).

[3] For example, the defendants appear to consider Victor Fuentes, Pedro Gutierrez, and Lucas Tenesca to be pizza chefs. (Def. 56.1 Statement, ¶ 22).

exemption: they received more than $455 per week.   (Pl. 56.1 Statement, ¶ 74; Back Wages Owed at 83, 98-101, 105-06; 10/14/16 Perez Decl., ¶¶ 6-8).   It is also evident from the plaintiff's June 16, 2013, to November 18, 2015 payroll and time card submissions that other employees in "pizza" positions fail to satisfy the salary requirements because they were paid hourly. (Back Wages Owed at 58, 68-70, 87, 97, 121-24; Payroll Register for Week 26 (Julian Melendez), attached as Exh. 14 to 9/16/16 Tai Decl., at 11; Payroll Register for Week 26 (Esteban Perez), attached as Exh. 18 to 9/16/16 Tai Decl., at 16; Payroll Register for Week 43 (Miguel Velasquez Martinez), attached as Exh. 23 to 9/16/16 Tai Decl.; Time Card Report from June 17, 2013, to June 23, 2013 (Julian Melendez), attached as Exh. 15 to 9/16/16 Tai Decl., at 3-4; Time Card Report from Feb. 9, 2015, to Feb. 15, 2015, attached as Exh. 24 to 9/16/16 Tai Decl.).   Therefore, only the exempt status of Mr. Padilla, Mr. Rojas, and Mr. Siguencia is relevant.

### 2.   Primary Duty

To determine whether an employee's primary duty was management, a district court considers the character of the employment as a whole, including factors such as

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other

employees for the kind of nonexempt work performed by the employee.

Mullins v. City of New York, 653 F.3d 104, 106-07 (2d Cir. 2011) (quoting 29 C.F.R. § 541.700(a)). Management includes, but is not limited to,

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; . . . providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

Id. at 107 (alteration in original) (quoting 29 C.F.R. § 541.102). "In this Circuit, courts have found that a chef's 'primary duty' is not management where his duties primarily entail cooking . . . . [W]here it is undisputed that a chef's management duties were more important to his employer than his cooking duties, courts have found that the chef's primary duty is management." Karropoulos v. Soup Du Jour, Ltd., 128 F. Supp. 3d 518, 530-31 (S.D.N.Y. 2015).

Here, the defendants' submissions indicate that the pizza chefs -- along with the kitchen chefs -- were responsible for running and managing the restaurant, supervising kitchen staff, ensuring food was produced, deciding on supplies and ingredients,

ordering food, attending meetings, scheduling and rescheduling employees, hiring, training, and distributing paychecks. (Def. 56.1 Statement, ¶¶ 5-12; Declaration of Paola Pedrignani dated Oct. 28, 2016 ("Pedrignani Decl."), attached as Exh. B to Declaration of Stephen D. Hans dated Oct. 27, 2016 ("10/27/16 Hans Decl."), ¶¶ 4-5, 8; Declaration of Igor Segota dated Oct. 27, 2016 ("Segota Decl."), attached as Exh. A to 10/27/16 Hans Decl., ¶¶ 8-9). Ms. Pedrignani states that pizza chefs only make pizzas "[f]ifty percent" of the time. (Deposition of Paola Pedrignani dated April 25, 2016 ("Pedrignani Dep."), attached as Exh. D to Declaration of Stephen D. Hans dated Aug. 15, 2016 ("8/15/16 Hans Decl."), at 121). She also states that the pizza chefs attended management meetings where equipment, hiring, and recipes were discussed. (Pedrignani Dep. at 68-70).

However, the plaintiff's submissions suggest that a pizza chef's only duty is to make pizza (Pl. 56.1 Statement, ¶¶ 78, 82, 86, 88), and that checking on other employees or making the schedule takes only "seconds" or "minutes" (Pl. 56.1 Statement, ¶¶ 90, 93). The pizza chefs themselves state that their primary duty was to make pizza, only infrequently assisting in the management of the restaurant. (Declaration of Cesar Padilla dated Oct. 6, 2016 ("Padilla Decl."), ¶¶ 3, 8, 11; Declaration of Joffre Siguencia dated Oct. 7, 2016 ("Siguencia Decl."), ¶¶ 5-11).

Determining whether management was the primary duty is a fact-intensive inquiry, and "[m]any courts have held that resolving this difficult and intensive factual inquiry is inappropriate at summary judgment." Indergit v. Rite Aid Corp., Nos. 08 Civ. 9361, 08 Civ. 11364, 2010 WL 1327242, at *6 (S.D.N.Y. March 31, 2010) (citing cases). Accordingly, neither party is entitled to summary judgment with respect to this factor.

>   3.   Directing the Work of Two or More Employees

The plaintiff asserts that the pizza chefs did not customarily and regularly direct the work of at least two employees because any such supervisory responsibility was shared with the kitchen chef.

To qualify for the exemption, the regulations require the supervision of the "equivalent" of two full-time employees, 29 C.F.R. § 541.104(a), and thus a supervisor need only supervise eighty hours of employee time, regardless of the number of employees actually supervised, Moore v. All Star Auto Recycling, Inc., No. 11 CV 223, 2013 WL 595271, at *6 & n.4 (E.D. Cal. Feb. 14, 2013); Johnson v. Big Lots Stores, Inc., 561 F. Supp. 2d 567, 577 (E.D. La. 2008) ("Perhaps the clearest way to make sense of these rules is the Department of Labor's '80-hour' rule, which generally requires an exempt supervisor to 'direct a total of 80 employee-hours of work each week.'" (quoting Defining and Delimiting the Exemptions for Executive, Administrative,

Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122-01, 22135, 2004 WL 865626 (April 23, 2004))). However, "[h]ours worked by an employee cannot be credited more than once for different executives. Thus, a shared responsibility for the supervision of the same two employees in the same department does not satisfy this requirement." 29 C.F.R. § 541.104(d); see Moore, 2013 WL 595271, at *6; In re Enterprise Rent-a-Car Wage & Hour Employment Practices Litigation, MDL No. 2056, Misc. No. 09-210, Civ. Nos. 07-1687 et al., 2012 WL 4048845, at *17 (W.D. Pa. Sept. 13, 2012) ("The record indicates there were many times during which there were fewer than two nonexempt employees working at the Thompson branch. There is insufficient evidence in the record to conclude that there were sufficient collective hours . . . to satisfy this element of the executive exemption . . . ."); Johnson, 561 F. Supp. 2d at 577. Still, "[a] full-time employee who works four hours for one supervisor and four hours for a different supervisor, for example, can be credited as a half-time employee for both supervisors." 29 C.F.R. § 541.104(d).

At each restaurant, a kitchen chef, pizza chef, salad maker, and dishwasher generally worked in the kitchen at one time[4] (Def. 56.1 Statement, ¶ 9), and there is evidence that each restaurant typically employed two dishwashers and two salad makers to cover

---

[4] The Amsterdam location had a full-time prep cook in addition to the salad maker and dishwasher. (Pedrignani Dep. at 82, 131).

different shifts (Deposition of Alfredo Bello dated March 11, 2016 ("Bello Dep."), attached as Exh. 6 to 9/16/16 Tai Decl., at 67-68).  The defendants' submissions indicate that the kitchen chef and pizza chef shared supervision of the kitchen employees equally. (Def. 56.1 Statement, ¶¶ 9-11).  The kitchen chef and pizza chef each worked five days per week and would stagger their days off. (Bello Dep. at 35).  Thus, portions of the record indicate that the pizza chef would be the only supervisor two days per week. (Bello Dep. at 68-69, 71).  The pizza chefs typically worked at least sixty hours per week.  (Back Wages Owed at 83, 98-101, 105-06).  The restaurants were open from 11:00 a.m. to 10:00 p.m. everyday.  (Pl. 56.1 Statement, ¶ 78; Deposition of Esteban Salazar dated April 20, 2016, attached as Exh. 5 to 9/16/16 Tai Decl., at 64).  Thus, the pizza chefs ostensibly worked an average of twelve hours each workday.

Thus, for two days during the week, each pizza chef logged forty-eight hours of supervisory time, because he worked twelve hours each day and solely supervised two employees all day.[5]  Then, for three days during the week, each pizza chef accumulated a total of thirty-six hours of supervisory time, because he worked twelve hours each day and split the supervision of two employees with the

---

[5] 2 employees x 12-hour shift x 2 days.

kitchen chef.[6]  Therefore, there is evidence that the pizza chefs earned a total of eighty-four hours of supervisory time per week.

However, the plaintiff submits evidence indicating that the pizza chefs did not exercise supervisory responsibilities at all. (Pl. 56.1 Statement, ¶¶ 78, 81, 88 90; Padilla Decl., ¶ 11; Siguencia Decl., ¶ 7; Martinez Decl., ¶¶ 5, 15).  Therefore, there is a genuine dispute regarding whether the pizza chefs supervised at least eighty hours of employee time, as there is conflicting evidence as to whether the pizza chefs customarily and regularly supervised employees.  Accordingly, judgment cannot be granted to either party as to whether the pizza chefs customarily and regularly directed the work of at least two full-time employees.

### 4.  Hiring and Firing

To satisfy the fourth prong, an employee must have the authority to hire and fire, or his suggestions as to the status of other employees must be given particular weight.  Ramos, 687 F.3d at 559-60.  "While established position descriptions and titles may assist in making initial FLSA exemption determinations, the designation of an employee as FLSA exempt or nonexempt must ultimately rest on the duties actually performed by the employee." 5 C.F.R. § 551.202(e); see Madden v. Lumber One Home Center, Inc., 745 F.3d 899, 906 (8th Cir. 2014); Martinez v. Hilton Hotels Corp.,

---

[6] (2 employees x 12-hour shift x 3 days) ÷ 2 supervisors.

930 F. Supp. 2d 508, 527 n.18 (S.D.N.Y. 2013) ("Therefore, the Court is not persuaded that simply having the authority to initiate disciplinary proceedings is sufficient to satisfy § 541.100(a)(4), especially on a motion for summary judgment.").

There is some evidence that the pizza chefs assisted in the hiring and firing of employees and that their suggestions were given particular weight.  (Def. 56.1 Statement, ¶¶ 12-13, 15; Pedrignani Decl., ¶¶ 6-7; Segota Decl., ¶ 10).  Ms. Pedrignani states, "[N]o one is hired or trained without the absolute approval of both the kitchen and pizza chef."  (Pedrignani Decl., ¶ 7). However, some pizza chefs stated that they had no such authority and never exercised it.  (Padilla Decl., ¶ 19; Siguencia Decl., ¶ 12).

Therefore, there is a genuine, material dispute regarding whether the pizza chefs are exempt from the FLSA's overtime pay rule.

E.    Overtime Claims

The plaintiff seeks judgment on his June 16, 2013, to November 18, 2015 overtime claims.  The plaintiff argues that: (1) the defendants did not aggregate hours when an employee worked at different restaurant locations, (2) the defendants did not combine hours when an employee worked at different positions or different

rates,[7] and (3) the defendants miscalculated the "regular rate of pay" for overtime for some employees.[8]  (Pl. Memo at 8).

Under the FLSA, an employee must be compensated at a rate of at least one and one-half times his regular hourly rate for every hour worked in excess of forty hours per week.   29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.107.   The employment of any employee who worked for two or more joint defendants is considered one employment for the purposes of overtime.   See Teri v. Spinelli, 980 F. Supp. 2d 366, 376 (E.D.N.Y. 2013).   Furthermore, "the employer must total all the hours worked by the employee for him in that workweek (even though two or more unrelated job assignments may have been performed)."  29 C.F.R. § 778.103.   To calculate the regular rate when different straight time rates are paid, courts in this district use the weighted average method, which is "properly calculated by adding all of the wages payable for the hours worked at the applicable shift rates and dividing by the total number of hours worked."   Gorman v. Consolidated Edison Corp., 488 F.3d 586, 596 (2d Cir. 2007) (quoting Brock v. Wilamowsky, 833 F.2d 11, 14 (2d Cir. 1987)).   The "regular rate by

_____

[7] For example, the plaintiff states that one employee worked 47.25 hours in one week as a barista and 17 hours as a delivery person; however, he was only paid for 7.25 hours of overtime instead of 24.25 hours.  (Pl. Memo. at 11).

[8] For example, the plaintiff states that a general captain was paid a salary of $180 per week plus $5.00 per hour and tips, but the defendants did not factor the weekly salary into the overtime rate.  (Pl. Memo. at 13).

its very nature must reflect all payments which the parties have
agreed shall be received regularly during the work [period]."
Scott v. City of New York, 592 F. Supp. 2d 386, 405 (S.D.N.Y. 2008)
(alteration in original) (quoting Bay Ridge Operating Co. v. Aaron,
334 U.S. 446, 468 (1948)).

In support of his motion, the plaintiff submits an affidavit
from investigator Elizabeth Perez, which contains detailed
summations of back wages owed.  To create these spreadsheets, she
analyzed payroll records, time card reports, and bookkeeper
spreadsheets.  (9/16/16 Perez Decl., ¶ 11).  However, where the
time card reports and payroll records were inconsistent, she used
the payroll records.  (9/16/16 Perez Decl., ¶ 19).  The payroll
records were complete for the period at issue.  (9/16/16 Perez
Decl., ¶ 14).  The payroll records show how many hours an employee
worked as well as his rate or rates of pay.  (9/16/16 Perez Decl.,
¶ 15).

The spreadsheets and payroll samples demonstrate that some
employees worked at more than one location and that their hours
were not combined for the purposes of overtime.  (Pl. 56.1
Statement, ¶¶ 53, 58-59; Back Wages Owed at 17, 47, 62, 66-68, 71,
75-79, 115-22; Payroll Registers for August 9, 2013, attached as
Exh. 17 to 9/16/16 Tai Decl.).

The spreadsheets also show that the defendants often did not
combine hours worked by an employee at multiple pay rates or at

different positions.  (Pl. 56.1 Statement, ¶¶ 56–57, 59–60; 9/16/16 Perez Decl., ¶ 7; Back Wages Owed at 73–81, 115–124).  Ms. Perez, in her summary, calculates the back wages owed to these employees using the weighted average method[9] (9/16/16 Perez Decl., ¶¶ 22, 25–30).  Thus, the Secretary has carried his burden here.

Finally, the plaintiff shows that some employees received a "fixed sum" in addition to their hourly compensation that was not included when calculating their regular rates.  (Pl. 56.1 Statement, ¶¶ 61–64; Back Wages Owed at 37–45, 63, 110).  The plaintiff calculated back wages owed here using the weighted average method[10] and has thus carried his burden.  (9/16/16 Perez Decl., ¶ 22, 30, 32; Back Wages Owed at 37–45, 63, 110).

---

[9] Ms. Perez followed a general formula:

For employees who received multiple non-tipped rates of pay in the same week and did not receive any overtime premiums, [she] multiplied the hours paid at each rate and then added them together to determine the total amount of hours at straight pay.  That number was then divided by the total hours paid . . . to determine the regular rate of pay . . . .  [She] divided the regular rate of pay by two to get the overtime premium at half-time and then multiplied it by the overtime hours paid . . . to arrive at the overtime due . . . .

(9/16/16 Perez Decl., ¶ 25).  When the defendants paid some overtime wages, Ms. Perez credited the defendants that amount.  (9/16/16 Perez. Decl., ¶¶ 28–29).

[10] "For employees that received an hourly rate plus a weekly salary or commission, [Ms. Perez] added [that] to the total straight time pay for the total hours paid . . . and then divided that number by the total hours worked to get the regular rate." (9/16/16 Perez. Decl., ¶ 30).

The defendants fail to show that there are any material facts in dispute with respect to these claims.  The defendants refer to a number of errors and deficiencies in an initial audit by the Department of Labor.  (Declaration of Stephen D. Hans dated Oct. 14, 2016 ("10/14/16 Hans Decl."), ¶¶ 5, 7-17).  The defendants specifically point to mistakes in a previous back wages owed chart, but those charts were preliminary computations that were corrected in the charts prepared for summary judgment.  (Compare Back Wages Summary for Munir Agushi dated June 9, 2016, attached as Exh. M to 10/14/16 Hans Decl.; Back Wages Summary for Masa Balandric dated June 9, 2016, attached as Exh. O to 10/14/16 Hans Decl., with Back Wages Owed at 5, 17).  Indeed, the Secretary's initial computation of back wages owed was revised after discovery in this case. (9/16/16 Perez Decl., ¶¶ 9-10).  Ms. Perez reviewed a complete set of payroll records as well as voluminous time card and bookkeeper records.  (9/16/16 Perez Decl., ¶ 11).  Furthermore, the defendants' assertion that Ms. Perez should have interviewed employees and supervisors fails to create a disputed issue of fact. (10/14/16 Hans Decl., ¶¶ 7-8).

The defendants present no competent evidence opposing the plaintiff's submissions.  Therefore, summary judgment is granted for the plaintiff on his overtime claims in the amount of

$45,101.42.[11] (Summary of Back Wages Owed for June 16, 2013 – Nov. 18, 2015, at 1-2).

    F.   Liquidated Damages

An employer who violates the overtime provisions of the FLSA is liable for an amount in liquidated damages equal to the amount owed in compensatory damages. 29 U.S.C. § 216(b); Smith v. Nagai, No. 10 Civ. 8237, 2012 WL 2421740, at *4 (S.D.N.Y. May 15, 2012). However, the court has the discretion to deny liquidated damages if the employer shows that, despite the failure to pay proper wages, she acted in subjective good faith and had an objectively reasonable ground for believing that the actions were not a violation of the FLSA. 29 U.S.C. § 260; Herman v. RSR Security Services Ltd., 172 F.3d 132, 142 (2d Cir. 1999). "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." Herman, 172 F.3d at 142. Good faith is established only if the employer takes "active steps to ascertain the dictates of the FLSA and then act to comply with them." Id.

---

[11] The plaintiff requests back-wages totaling $80,148.36 for the June 16, 2013, to November 18, 2015 period; however, because summary judgment cannot be granted on the pizza chef claims, the total must be reduced by $35,046.94. (Summary of Back Wages Owed for June 16, 2013 – Nov. 18, 2015, attached as Exh. A to 9/16/16 Perez Decl., at 1-2).

Here, there is no evidence suggesting that the defendants took active steps to comply with the FLSA. Indeed, even after the Department of Labor began its investigation in May 2013, the defendants' improper pay practices continued. (Back Wages Owed at 1-124). While Ms. Pedrignani consulted accountants about the structure of her businesses (Pl. 56.1 Statement, ¶ 48), this was clearly not to ascertain "the dictates of the FLSA," <u>Copantitla v. Fiskardo Estiatorio, Inc.</u>, 788 F. Supp. 2d 253, 317 (S.D.N.Y. 2011) (quoting <u>Barfield</u>, 537 F.3d at 150). Therefore, the plaintiff is entitled to liquidated damages on his claims.

<u>Conclusion</u>

For the reasons stated above, the defendants' motion for summary judgment (Docket no. 68) is denied, and the plaintiff's motion for summary judgment (Docket no. 60) is granted in part and denied in part:

1. There is a genuine dispute as to whether Mr. Rojas, Mr. Padilla, and Mr. Siguencia are exempt from the overtime pay rule.

2. Other "pizza" positions are not exempt for the period from June 16, 2013, to November 18, 2015.

3. Summary judgment is denied as to whether other pizza chefs are exempt prior to June 16, 2013.

4. The defendants are jointly and severally liable.

5. The plaintiff's summary judgment motion for overtime claims -- except for Mr. Rojas', Mr. Padilla's, and Mr. Siguencia's claims -- is granted in the amount of $45,101.42.

6.   Liquidated  damages  is  awarded  on  the  overtime
     claims in the amount of $45,101.42.

The  parties  shall  submit  the  joint  pretrial  order  by  March
27, 2017.


                         SO ORDERED.


                         _____
                         JAMES C. FRANCIS IV
                         UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         February 28, 2017

Copies transmitted via ECF this date:

Amy Tai, Esq.
James Wong, Esq.
U.S. Department of Labor
201 Varick St., Room 983
New York, NY 10014

Stephen D. Hans, Esq.
Stephen D. Hans & Associates, PC
45-18 Court Square, Suite 403
Long Island City, NY 11101