UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
R. ALEXANDER ACOSTA, Secretary of Labor,
United States Department of Labor,

                              Plaintiff,                **15-CV-004655 (JCF)**

      -against-

MANNA 2nd AVENUE LLC d/b/a GINA LA
FORNARINA, MANNA MADISON AVENUE LLC
d/b/a GINA LA FORNARINA, MANNA AMSTERDAM
AVENUE LLC d/b/a GINA LA FORNARINA, MANNA
LEXINGTON AVENUE LLC d/b/a GINA LA FORNARINA,
and PAOLA PEDRIGNANI, Individually and as Owner,

                              Defendants.
------------------------------------------------------------------------X

## DEFENDANTS' POST-TRIAL MEMORANDUM OF LAW

Stephen D. Hans, Esq.
STEPHEN D. HANS & ASSOCIATES, P.C.
45-18 Court Square, Suite 403
Long Island City, New York 11101
Tel: 718.275.6700
Fax: 718.275.6704
*Attorneys for the Defendants*

**TABLE OF CONTENTS**

**I. PRELIMINARY STATEMENT**..................................................................................**4**

**II. STANDARD FOR WILLFULNESS**..........................................................................**6**

**III. ARGUMENT** ....................................................................................................………..**7**

    A.  Sosimo Dioniso………………………………………………………………...………**7**
    B.  Walberto Ruiz……………………………………………………………………...…**9**
    C.  Elizabeth Perez & Record Evidence……………………………………….……..**10**
    D.  Paola Pedrignani…………………………………………………………….………**14**

**IV. CONCLUSION** .......................................................................................................……..**19**

# TABLE OF AUTHORITIES

**CASES**

*Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163 (2d Cir. 2000)………………….…6

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009)………………………………………………………………………………….…6

*Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013)………………………..6

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011)……………………………….....6

*McLaughlin v. Richland Show Co.,* 486 U.S. 128 (1988)………………………………………..6

*Parada v. Banco Industrial de Venezuela, C.A.,* 753 F.3d 62 (2d Cir. 2014)……………………7

*Pinovi v. FDD Enters.*, Inc., 13 Civ. 2800, 2015 U.S. Dist. LEXIS 89154, 2015 WL 4126872 (S.D.N.Y. July 8, 2015)………………………………………………………………………..6

*Young v. Cooper Cameron Corp.,* 586 F.3d 201 (2d Cir. 2009)…………………………………6

**STATUTES RULES AND REGULATIONS**

29 U.S.C. § 255(a)……………………………………………………………………………..6

### I. PRELIMINARY STATEMENT & STATEMENT OF FACTS

Defendants MANNA 2nd AVENUE LLC d/b/a GINA LA FORNARINA, MANNA MADISON AVENUE LLC d/b/a GINA LA FORNARINA, MANNA AMSTERDAM AVENUE LLC d/b/a GINA LA FORNARINA, MANNA LEXINGTON AVENUE LLC d/b/a GINA LA FORNARINA, and PAOLA PEDRIGNANI (collectively "Defendants" or "Gina La Fornarina"), by and through their counsel, respectfully submit this Post-Trial Memorandum of Law.

The U.S. Department of Labor (DOL) commenced an audit of the Defendants in 2015 examining possible wage violations which included overtime; spread of hours and whether certain employees were exempt from the Fair Labor Standards Act (FLSA) because they were managers. Summary Judgement was granted to the Plaintiffs against the Defendants on the issue of exempt status of certain employees on February 28, 2017. The singular issue remaining between the parties is whether the Defendants willfully violated the FLSA, between June 2012 and June 2013, which would be three years prior to the time commencement of that audit.

The Defendants contend they did not violate the FLSA willfully in accordance with the prevailing case law and the facts submitted into evidence. A trial was held on July 31 and August 1, 2017 on this issue before Magistrate James C. Francis. The following brief is a summation of the testimony and evidence submitted by both sides in that trial. Additionally, the Defendants have set forth persuasive case law directly on this issue supporting their contention that the Defendants did not violate the FLSA willfully.

The Plaintiff stated that a majority of the facts are not in dispute (T8) which the Defendants believe is an incorrect statement. Both sides admit that all four Defendants' restaurants are joint employers and that the Defendants violated the FLSA overtime laws in 2014

4

and 2015. Both sides admit that workers from one location worked at other locations and were not paid overtime for the time worked in the second location. The workers were paid overtime if they worked more than 40 hours in one location. Approximately seven workers who worked in different positons received different rates of pay and overtime was not paid to those few employees. That is substantially all the parties agree upon.

The DOL misstates the law on this subject when she stated that an *"employer acts with reckless disregard when it is familiar with the FLSA, knows that at least one of its employees is not compensated for overtime pay yet makes no effort to ascertain whether they are in compliance with the law"*. That is not the articulated standard of "*reckless disregard*". This statement is what the Plaintiff believes how the Defendants conducted business and it is her opinion of the facts.

This brief includes an outline of the prevailing case regarding decisions on "*reckless disregard*". Suffice it to say, the Courts have substantially left the finding of "*reckless disregard*" to the trier of fact based upon the testimony and evidence submitted. There is no bright line test or stated formula which would be utilized for determining *"reckless disregard"*. This brief will outline various District Court rulings on this topic and set forth the reasoning the Court utilized regarding "*willfulness*" as well.

The Defendants' defense in this matter will be based upon three factors. The first factor is defendant Paola Pegrignani's ("Pedrignani" or "PP") actions, knowledge, and instructions as established by the evidence and testimony. Second, the well-established law on willfulness in FLSA violations supports a finding on behalf of the Defendants. Third, the credibility of the witnesses.

5

## II. LEGAL STANDARD FOR WILLFULNESS

The statute of limitations to bring an FLSA claim is two years; if an FLSA violation was "willful", however a three-year statute of limitations period applies. 29 U.S.C. § 255(a). "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011); *see also McLaughlin v. Richland Show Co.,* 486 U.S. 128, 133 (1988). "Mere negligence is insufficient." *Young v. Cooper Cameron Corp.,* 586 F.3d 201, 207 (2d Cir. 2009). An employer's actions, even if unreasonable, cannot be held as willful without a showing of recklessness. *McLaughlin*, 486 U.S. at 135 n.13.

"Recklessness is defined as at the least, an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co*., 553 F.3d 187, 198 (2d Cir. 2009) (citation omitted); *see also Pinovi v. FDD Enters., Inc.,* 13 Civ. 2800, 2015 WL 4126872, at *4. Reckless disregard of a fact requires "subjective awareness" of the probability of the existence of the fact. *See, e.g., Celle v. Filipino Reporter Enterprises Inc*., 209 F.3d 163, 182 (2d Cir. 2000) (citation omitted). Moreover, it is not "necessarily reckless [for an employer] to adhere to . . . a practice in the face of legal risk." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 937-38 (S.D.N.Y. 2013).

"The burden is on the employee to show willfulness." *Young*, 586 F.3d at 207. Plaintiff must prove more than that defendant should have known it was violating the law. Reckless disregard "involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *Id.*; see also, e.g., *Pinovi v. FDD Enters*., Inc., 13 Civ. 2800, 2015 U.S. Dist. LEXIS 89154, 2015 WL 4126872, at *4 ("Recklessness is defined as, at the least, an

6

extreme departure from the standards of ordinary care, to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." (internal quotation marks and citation omitted)). "If an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." *Parada v. Banco Industrial de Venezuela, C.A.,* 753 F.3d 62, 71 (2d Cir. 2014) (internal quotation marks, citation, and brackets omitted).  The Plaintiff must prove knowledge or reckless disregard of FLSA requirements in accordance with the above legal standard with regards to the Defendants' actions regarding the overtime premium and joint employment of the Plaintiffs among the Defendant corporations.

### III. ARGUMENT

#### A. Sosimo Dionisio

The Plaintiff's first witness was an employee, Sosimo Dionisio.  He worked at two locations (T23), averaging 50 – 60 hours per week.  This witness testified in a tremendously incredulous manner when he stated that the Defendants conducted business meetings in the middle of the restaurant; with customers and workers surrounding them and in a loud voice which was enough for him to hear what was said while he served them and other customers.  It is absolutely amazing and only his opinion when he testified that "*Paola does not like to pay overtime*" (T24).

This witness was prepared by the Plaintiff's attorneys for hours before he testified. (T34). He dodged questions when he was asked whether he was being prepared for the trial.  When he was serving other customers in the restaurant, he had the audacity to testify that he heard the Defendants discussing overtime even though he was not sitting with the Defendants. (T40).  As

7

he is retrieving coffee and water, he wants this Court to believe his ears are paying close attention to the Defendants conversation in the middle of the room.  The Defendants believe the Court should question the credibility of this witness because of the farfetched and sheer unbelievability of this testimony.  This witness has been involved in this proceeding from the beginning.  He has been meeting with the DOL representatives; Solicitor General counsel and lawyers and yet he has no idea that he was owed approximately $3,000.00.

This witness combined his opinion, on the Defendants' pay practices and overtime with what he wants the Court to believe, that is, the Defendants held business meetings in the middle of the restaurant and loud enough for him to hear while he was serving.  He was questioned about this alleged meeting and he even had the colossal gall to testify, "*I don't expect the judge to believe that they were doing that*" (T49).

Even more revealing was the fact that after several hours of preparation by the Plaintiff's counsel, and knowing this case was proceeding against the Defendants for years, this witness amazingly testified he did not know the amount of money at stake for him in this trial. (T51). Clearly, he knew there was an investigation and he would never have come to Court if there was not something in it for him.

As with many witnesses who lie when testifying, Mr. Dionisio contradicted himself. When you are not telling the truth, and making it up as you go, the testimony collectively often reveals how incredulous one can be.  He stated Igor liked to pay overtime and Paola did not. (T47).  However, he also testified fictional meetings were held at the restaurant, and they discussed avoiding overtime payments. (T24, 25).  The question is, why would Igor say that or meet to reduce overtime if he liked to pay overtime. (T47).  Then later in his testimony, he

testified that Igor wanted to cut his hours because he worked too much overtime. (T50). That testimony just does not line up with earlier testimony that Igor liked to pay overtime.

In conclusion, this is one of two witnesses used by the Plaintiff to support willfulness. Having a witness who was prepared to testify to fictional meetings and discussions of overtime avoidance certainly positions one to argue they were willful.  However, Mr. Dioniso contradicted himself when he discussed overtime.  He spoke with the investigator, Ms. Perez and spent approximately two hours being prepared for trial.  When the day of trial arrives, he testifies that he had no idea of what he was entitled to receive.  When he was asked whether $3,000 sounds like the number, he also did not know.  His testimony was evasive and just too hard to believe. A young man of modest means, would have known or would have been informed of exactly what monies were owed to him.  Instead, he "*wants to tell his story*" (T45) and yet his story is overtime owed to him but he has no idea of the amount.

### B.  Walberto Ruiz

The only other worker who testified was Walberto Ruiz.  This employee states that Paola told him to work at a different location and scheduled him. (T55).  The prior witness stated Igor made the schedules.  Mr. Ruiz engaged in a substantial amount of speculation.  When he was not scheduled for more than 50 hours, it was his belief that "*he doesn't want me to work more than 50 hours*" (T59).  The witness does not attribute that statement to any Defendant.  While he was asked about any discussions with Igor, he never answered the question.  Instead, he testified what he wanted and where he wanted to work. (T59)

Even though he testified he was restricted to 50 hours in one location, he would always receive his overtime at any location.  This witness seems to be testifying that the Defendants

"*needed to balance the hours*" (even though he never attributes such a comment to any person) but on the other hand, if he worked 70 hours, he absolutely got paid his overtime if he would in one location. (T63).

### C. Elizabeth Perez & Record Evidence

Ms. Perez from the DOL testified as the only government witness.  She was assigned to this audit in December 2014 and thus she was not part of nor participated in the meetings and inspections of the Defendants records at the outset of this investigation.  She admitted she only reviewed the findings of the original investigator, Ms. Torres, but she never spoke with her (T68).  It was PP who testified that Ms. Torres told her she could see that these mistakes were not intentional and she wanted to limit the investigation to two years.  Ms. Perez knew nothing about that and never talked to Ms. Torres about that fact (T99,101).

Essentially, Ms. Perez's testimony confirmed what the Defendants have already admitted in this matter, that is, employees worked at different corporate locations and when they exceeded 40 hours combined, they were paid straight time and no overtime.  She testified from records introduced that employees regularly worked at different locations and the hours were combined but no overtime premium was paid when they exceeded 40 hours.

As this Court is aware, the Defendants do not deny that happened.   PP testified how that happened.  However, Ms. Perez testified that it was a "scheme" which implies PP knew exactly what she was doing and that she acted "knowingly" thereby supporting a finding of willfulness.  During cross-examination, Ms. Perez admitted that the term "scheme" was only her opinion and nothing more.  Moreover, she testified that she thought PP knew what she was doing.  When she was questioned on cross-examination, she was forced to admit, although evasive, that her opinion was based upon hearsay from certain unnamed employees and nothing more than that.

10

She finally admitted she did not know if PP "looked at" the timecards and payroll records. Then after a lengthy back and forth where Ms. Perez did not want to answer counsel's questions, she finally testified (T110);

> Q:    What I am asking you is do you happen to know if she knew what she was doing, if she had knowledge of these mistakes?
>
> A:    I do not have any personal knowledge of her mistakes.

Ms. Perez identified seven employees who worked at a singular location in different capacities and positions who were not paid overtime when they exceeded 40 hours after combining the hours in each position. There is no question this was improper. However, it is crucial to note that the combining of hours this way was so infrequent that it does not rise to the level of recklessness required for a finding of willfulness under the FLSA.

In the direct examination of Ms. Perez, Exhibit P-17 and P-18 is presented to the witness and is asked to review the time card report and payroll for Jose Rodriguez. Ms. Perez shortly thereafter testifies that "Jose Rodriguez worked for a total of 74 hours and 53 minutes… no overtime compensation was paid to this employee." Ms. Perez is also shown Exhibits P-19 and P-20 and comes to a similar conclusion, this time for employee Misael B. Santos, that the employee worked beyond 72 hours per week, was paid in multiple checks at different rates, and was not paid overtime. (T75). Finally, the witness also reviewed Exhibits P-20 and P-21 with regards to employee Elena Scherbak, who also was paid in multiple checks from a single location and did not receive overtime.

The practice of paying employees in separate checks when they worked at a singular location was not part of a scheme to dodge overtime payments, nor is it a reckless disregard of FLSA overtime requirements.  Defendants did not put employees into separate roles in order to dodge overtime, but rather to fulfill different needs.

In Exhibits P-17, P-19, and P-21, other employees worked multiple roles at multiple payrates but did not work over forty hours per week such as Rigaberto Mendoza (GINA 2ND – 001383) and Miguel A. Gonzalez (GINA 2ND – 001352).  Furthermore, many more employees at a single restaurant were operating in a single function and worked for over 40 hours per week, and were paid for that time.  In Exhibit P-17, employees Miguel Velasquez Martinez, Nikolay Georgiev, Carlos Temaj, Andrew Alexander, Jesus German, and Raymundo Perez Lopez all worked in excess of 40 hours per week at a single location and were paid an overtime premium for those hours as shown in Exhibit P-18.  Again, in Exhibit P-19 numerous employees worked a single job in a single location and received overtime premiums in their pay:  Miguel Velasquez Martinez, Jose Rodriguez, Victor Fuentes, Jorge Luis, Javier Orea, Jesus German, and Carlos Temaj.  These workers received their overtime premium in their paychecks as shown in Exhibit P-20.  The same applies in Exhibit P-21 with regards to Miguel Velasquz Martinez, Carlos Temaj, Andrew Alexander, Javier Orea, Jesus German, Clay Calle, Julio Cuellar, and Raymundo Perez Lopez.

The rare occurrence of an employee working for multiple pay rates, receiving, multiple checks, and not getting overtime premium while working at a single defendant corporation location is so rare that the plaintiff only presented three instances of such a thing occurring in the defendant's time card records.  To the contrary, it was much more common for an employee to work a single position for over 40 hours per week and receive their overtime premium.  The

occurrence in Exhibit P-24, P-25 where employee Carlos Temaj worked two positions with two different rates of pay and still received overtime is explained by the change in accounting personnel.  The documents in Exhibit P-24 and P-25 were from the week of July 5, 2012.

The defendant engaged Neeta Consulting in October 2012 to handle the payroll for the defendant corporations after which the method had changed.  PP relied upon her accountant to handle overtime payment calculations and as such the change in accountant is the explanation for the change in this apparent change in overtime payment policy, not because of a scheme on the part of the defendants.  PP had relied upon instruction from her accountant that she had to pay people who worked different jobs in different checks. (T200-01).  PP's understanding was that this was necessary to properly file taxes, understand restaurant P&L, and for other financial documentation.  Therefore, PP followed her accountant's instructions and paid the additional money to issue more checks to employees that worked in multiple restaurants or in multiple jobs per week.

When PP was questioned in both her direct and cross-examination, she consistently maintained and detailed how these payroll errors occurred.  There were several people who were responsible for the combining of hours in the payroll (T161).  She testified that she believed when they worked in different "categories", it meant two different departments.  PP testified "I have to admit at the time, I didn't know we had to combine from different departments.  I then discovered after that, that combining hours is pretty tough work.  Honestly, I wasn't even aware we were doing that, and I didn't know too much about it".

Ms. Perez was clear that there was no failure to pay overtime in one location if you worked only in one position (T111).  In that case, they received these overtime payments as the law requires. (T114).

**D. Paola Pedrignani**

The sole witness for the Defendants was Paola Pedrignani (PP) who was the owner of the Defendant corporations at the time of the DOL audit.

She is an educated architect (T121) and prior to opening any of the Defendant restaurants, she managed five restaurants in New York but not one of those restaurants operated more than one location. (T123). In her capacity as a Manager, her responsibilities were confined to customers, the floor, and generally the employees as they performed their job. She did not set, change or establish pay rates. That obligation was performed by the general manager. (T123).

The Defendant restaurants opened months apart from each other. PP hired Igor Segota (IS), who served as her general manager. IS was responsible for issuing the schedule for employees. PP would meet with IS regularly but the notion that PP, IS and the accountant met openly in the middle of the restaurant, and discussed employee overtime while employees served customers around them, is simply preposterous and is so incredibly false. PP testified she never met with her bookkeeper or accountant in the open at the restaurant since they actually had an office which they would utilize to meet in. (T131). PP's recollection was that Mr. Dionisio would regularly leave work at 4PM, which is the time he identified as the appropriate meeting time. PP acknowledged on cross examination that he occasionally worked longer hours but his normal hours were 4PM or 5PM starting time. That would have prevented him from listening to their purported meetings which PP denied having occurred openly in the restaurant. Finally, on this point, the bookkeeper, Neetu, was not a person PP discussed overtime with nor did Neeta offer any advice or instruction in that regard.

PP admitted in the trial that she made mistakes. She admitted at times, she overpaid employees because, as she stated, "we didn't know what we were doing." (T133). It was

14

important that her employees actually be paid overtime and they were when they worked at their assigned location.

PP never denied mistakes were made. Many were brought to her attention the first time by Ms. Torres. When the restaurants first opened they were overwhelmed and while they paid overtime, PP did occasionally check the payroll to see it was done correctly. PP also expected Neeta to guide her with the legal aspect of payroll and overtime and while she reviewed it, she did so sporadically and did not recognize the errors that Ms. Torres and the Department of Labor discovered ( T 134 – 135).

The investigator who initiated the audit was Y. Torres. PP met with her early on in the investigation and Ms. Torres told her that she was handling payroll incorrectly. However, Ms. Torres specifically told PP, after reviewing her payroll thoroughly, that she could see it was not maliciously done. (T138-139). Ms. Torres, the lead DOL Investigator, came to the conclusion that the Defendants' violations were not willful and therefore she was willing to limit the audit accordingly.

Obviously, Ms. Torres is not the authority to decide that fact. The Defendants are not suggesting this Court adopt the opinion of Ms. Torres (which was not denied by the Plaintiff or Ms. Perez). This Court has the sole and exclusive power to decide whether the admitted violations were willful. The reason this point was made is that the Defendants believe the Court should have all the available facts and assessments from both parties prior to deciding whether the Defendants acted willfully when they made their overtime compensation errors.

The core of the Defendants' defense in this matter is PP's detailed explanation why she believed giving employees two separate checks from different restaurant locations was permissible. She explained her reasoning (T142) when she stated; a) they were different

15

corporations; b) taxes were filed separately from each location; c) finances for separate companies had to be maintained for record keeping purposes; d) she spoke to the attorney who represented her in her lease and she took his advice on setting up three different companies; e) she asked her accountant how to pay employees working at separate location and was told to pay them separately because of the Profit/Loss statement which needed to be accurate, and tax implications for three corporations. (T142, 156, 157).

Willfulness in this trial involves a subjective determination by the Court. The question of whether PP acted willfully must involve the Court's determination of the testimony of PP, to wit, was it credible and does it have a ring of truth. She sought the assistance from lawyers as soon a she learned she was acting illegally. (T143). Her reasoning for sharing employees with other locations was fundamentally based on need – not to avoid paying overtime. (T145). She truly believed that three separate companies were formed and they were different. She testified it was similar to working a second job. As she stated she had workers who worked at Serafina and then at Gina and they were paid separately. She believed her workers were the same, working for different corporations much like a second job. She never realized or knew of the joint employer liability law or that all three restaurants were the same entity.

In each location, she paid overtime if the employee worked more than 40 hours. Even the DOL admits she paid overtime correctly in each location except when an employee worked in a different position. Certainly, if PP wanted to avoid paying overtime or acted in some "scheme" as the DOL suggested, she would have violated the overtime laws by not paying in each location. She would routinely ask the chef about what they needed as to employees and why people might be working extra hours. (T146). She knew what was going on and did not hide anything. She

received the payroll reports from each location and a summary of the overtime paid for the willful period and it shows no "scheme" to avoid paying overtime.

The error of the Defendants was not paying that one-half overtime premium.  As PP stated, it would not have been a big deal to pay the half time.  Despite the cross examination on this point, PP stated $100,000 split between three or four restaurants over a twelve-month period would not have been a prohibitive cost and one she could have paid without issue if she knew she was obligated to pay this premium.

PP never told IS or anyone else to avoid or limit overtime. (T155).  She never told an employee she had to cut overtime if they needed more workers.  As she testified, back in 2012-2013, they were going through "crazy" times and she was not organized to cover it properly. (T156).  She discussed it with her accountant but she failed to tell him that the employee had already logged in 40 hours at his assigned restaurant.  As she testified, she believed there was a legitimate reason for paying employees a separate check from each location; and she found it difficult to understand paying employees for overtime from different corporations. (T158).  She never discussed overtime with her attorney.  She certainly changed this practice immediately. (T161).

PP additionally admitted some employees received different rates of pay for different jobs at each location and there were several reasons for this mistake.  Some employees had different rates of pay for different jobs which often depended on whether the job was tipped or not.  Hence, their hours were split and the bookkeeping did not note when it exceeded 40 hours.  This was very limited and not a practice for all employees.  She admitted she was ignorant to this practice and it was more of a bookkeeping error.  Again, this was a practice she discussed with

her accountant and while this specific mistake was limited, she quickly eliminated different rates once she was informed that it was incorrect.

PP testified that payroll details were not as important as other issues because she relied on the payroll company to manage that (T168).  She believed she was operating the businesses correctly because of the different corporations (T175).  She testified she did not know they had to combine hours and she knew employees would be paid in multiple checks (T189).  It was certainly not a "knowing" violation.  As for reckless disregard, PP actions, while incorrect, were not reckless when she sought professional advice and actually paid overtime in each location.  The fact that she set up three companies that were independent, it justified separate employee checks in her mind.  Had she not discussed this with an attorney or accountant, or not paid overtime in any location, then perhaps a reckless claim would be appropriate.  That is not the case here.

Finally, other errors were pointed out in the Plaintiff's cross examination, a clear explanation was provided by PP.  For example, occasionally someone in training would be paid by separate checks because the training rate of pay was different (T191).  Sometimes the Defendants failed to pay employees for all the hours the week before because the employee failed to clock out properly (T193).  That would result in the DOL seeing paystubs of large amount with no overtime because of the employee's error.

## IV. CONCLUSION

Based on the foregoing, the plaintiff will not be able to prove that the defendant acted willfully in failing to pay certain employees their overtime premium pay.  The burden of proof is on the Plaintiff to prove that the defendants acted willfully in violating the law.  However, the violations that occurred are errors which can be attributed to Ms. Pedrignani's unfamiliarity with the FLSA that is not commonly known amongst lay-people – joint employer liability – and her reliance on advice and instruction from an attorney and an accountant.  These errors and failure to pay overtime occurred infrequently, especially when compared to the number of employees in the exhibits that did receive their proper overtime premiums and those who did not work more than forty hours per week.

Dated:  Long Island City, New York
September 22, 2017

STEPHEN D. HANS & ASSOCIATES, P.C.

By:___/s/_____
Stephen D. Hans (SH-0798)
45-18 Court Square, Suite 403
Long Island City, New York 11101
Tel: 718.275.6700
Fax: 718.275.6704
Email: shans@hansassociates.com
*Attorneys for the Defendants*