```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
R. ALEXANDER ACOSTA, Secretary of    :    15 Civ. 4655 (JCF)
Labor, United States Department      :
of Labor,                            :    OPINION AND ORDER
                                     :
            Plaintiff,               :
                                     :
    - against -                      :
                                     :
MANNA 2ND AVENUE LLC dba GINA LA     :
FORNARINA, MANNA MADISON AVENUE      :
LLC dba GINA LA FORNARINA, MANNA     :
AMSTERDAM AVENUE LLC dba GINA LA     :
FORNARINA, MANNA LEXINGTON AVENUE    :
LLC dba GINA LA FORNARINA, and       :
PAOLA PEDRIGNANI, Individually       :
and as Owner,                        :
                                     :
            Defendants.              :
- - - - - - - - - - - - - - - - - - -:
```

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/12/17
```

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

This action is brought by the Secretary of Labor (the "Secretary"),[1] alleging that the defendants violated provisions of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq. Most claims have been resolved by summary judgment or stipulation. The sole remaining issue -- whether the defendants' failure to pay all required overtime during the period June 16, 2012, through June 15, 2013, was willful -- was tried without a jury on July 31 and August 1, 2017. This opinion constitutes my findings of fact

---

[1] The case was originally commenced by then-Secretary of Labor Thomas E. Perez, but when R. Alexander Acosta succeeded Mr. Perez as Secretary, he was automatically substituted as plaintiff pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1

and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Background

Defendant Paola Pedrignani is the owner of the four corporate defendants -- Manna 2nd Avenue LLC, Manna Madison Avenue LLC, Manna Amsterdam Avenue LLC, and Manna Lexington Avenue LLC -- all of which operated during the relevant period as Italian pizza restaurants under the name Gina La Fornarina at different locations in Manhattan. Perez v. Manna 2nd Avenue LLC, No. 15 Civ. 4655, 2017 WL 780812, at *1 (S.D.N.Y. Feb. 28, 2017); (Tr. at 121-22; Exh. P-15 at 18-19).[2] The four locations were managed by Ms. Pedrignani together with the general manager, Igor Segota, and Alfredo Bello Herrera. (Joint Pretrial Order ("JPTO"), § VI(3)). They employed a variety of workers, categorized as kitchen chefs, pizza chefs, dishwashers, salad makers, prep cooks, trainees, servers, bussers, runners, porters, general captains, hosts, baristas, and delivery workers. Perez, 2017 WL 780812, at *1. It is undisputed that Ms. Pedrignani was a joint employer together with each of the corporate defendants. (JPTO, § VI(2); Stipulation dated Aug. 24, 2016, attached as Exh. 1 to Declaration of Amy Tai dated Sept. 16, 2016, ¶ 10).

---

[2] "Tr." refers to the trial transcript, while "Exh." refers to trial exhibits.

The Department of Labor began an investigation of the defendants in 2013. Perez, 2017 WL 780812, at *1. Thereafter, it filed the instant action, alleging that the defendants: (1) failed to pay their employees overtime in accordance with the FLSA for the period from June 16, 2012, to November 18, 2015, in part because they (a) failed to aggregate an employee's hours when the employee worked at multiple Gina La Fornarina locations in the same week and (b) improperly paid pizza chefs on a salaried basis without paying overtime; (2) failed to pay certain employees the required minimum wage; and (3) violated the FLSA's recordkeeping requirements by failing to keep, maintain, and preserve adequate and accurate records. Id.; (JPTO, § IV(A)).

Following the completion of discovery, both parties moved for partial summary judgment, and I denied the defendants' motion and granted the Secretary's motion in part and denied it in part. Perez, 2017 WL 780812, at *8. I found that certain pizza chefs did not qualify for the executive exemption under the FLSA and therefore had been improperly denied overtime, while factual uncertainties precluded a determination as to other pizza chefs. Id. at *3-6. As to other types of employees, I granted summary judgment to the Secretary and determined that these employees were entitled to overtime for the period from June 16, 2013, to November 18, 2015, as well as liquidated damages. Id. at *6-8.

Subsequently, the parties resolved most of the remaining issues. They agreed that none of the pizza chefs were exempt from the FLSA's overtime provisions. (JPTO, § VI(6)). They agreed that the defendants had violated the FLSA's recordkeeping requirements. (JPTO, § VI(10)). And they agreed that the defendants had not complied with the FLSA's overtime provisions for the period from June 16, 2012, through June 15, 2013. (JPTO, § VI(7)).[3] However, the statute of limitations for FLSA claims is two years unless any violation is willful, in which case the limitations period is three years. 29 U.S.C. § 255(a); Herman v. RSR Security Services Ltd., 172 F.3d 132, 141 (2d Cir. 1999). Since the Complaint here was filed on June 16, 2015, the Secretary can recover for the period from June 16, 2012, through June 15, 2013, only if it is determined that the defendants acted willfully. That is the issue that was tried.

Analysis

In order to establish willfulness in an FLSA action, it must be demonstrated that the employer either knew or showed reckless disregard for whether its conduct was prohibited by the statute. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); Parada v. Banco Industrial de Venezuela, C.A., 753 F.3d 62, 71 (2d Cir. 2014). The burden of proof is on the plaintiff. Parada, 753 F.3d

---

[3] The parties also agreed to dismiss without prejudice the Secretary's minimum wage claim. (JPTO, § VI(11)).

4

at 71; Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009). "Employers may be found to have acted recklessly pursuant to the FLSA if they made neither a diligent review nor consulted with counsel regarding their overtime practices and classifications of employees." DiFilippo v. Barclays Capital, Inc., 552 F. Supp. 2d 417, 425 (S.D.N.Y. 2008); accord Berrios v. Nicholas Zito Racing Stable, Inc., 849 F. Supp. 2d 372, 392 (E.D.N.Y. 2012). Nevertheless, "an employer's mere negligence or a good faith -- but incorrect -- belief that they were in compliance with the FLSA, are not sufficient to rise to the level of a willful violation." DiFilippo, 552 F. Supp. 2d at 425.

It is uncontested that many of the defendants' employees worked at more than one Gina La Fornarina location in any given work week, but when they did so, their hours were not aggregated; for example, if an employee worked twenty-five hours at the Amsterdam location and twenty-five hours at the Madison Avenue location in the same week, he would receive one check from each corporation and would not receive overtime pay even though he had worked more than forty hours in total. (JPTO, § VI(7)(a)). Likewise, when employees performed different jobs during the same week, their hours were not aggregated for purposes of paying overtime. (JPTO, § VI(7)(b)). What is disputed is whether the defendants engaged in these practices innocently, or willfully violated the employees' rights under the FLSA.

At trial, two employees testified on behalf of the Secretary. The first, Sosimo Dionisio, began working for the defendants in 2011, initially only at the 2nd Avenue location. (Tr. at 17, 19). When Mr. Dionisio worked exclusively at one location, he received a single check that included overtime pay for any hours worked over forty in a week. (Tr. at 20). However, five or six months after he began work, Igor Segota, the manager, began assigning Mr. Dionisio to work at the Amsterdam Avenue location as well as the 2nd Avenue location during the same week. (Tr. at 21-24). When he worked at two locations, he would receive one check from each and would not receive overtime for all of the hours that he worked. (Tr. at 26). When Mr. Dionisio asked Mr. Segota to be paid in a single check in order to receive overtime, he was told this was not possible. (Tr. at 27).

When Mr. Dionisio was first assigned to work at more than one location, he asked Mr. Segota why he was being moved around, and he was told that it was not Mr. Segota's decision, but Ms. Pedrignani's. (Tr. at 27-28). He also overheard discussions that Mr. Segota had with Ms. Pedrignani at the restaurants, during which they discussed the scheduling of employees. (Tr. at 24-25, 40-41). According to Mr. Dionisio, at these meetings, Ms. Pedrignani indicated that she "didn't like paying overtime," and Mr. Segota suggested that the best way to avoid doing so was to assign the employees to multiple locations. (Tr. at 24-25, 41-42).

6

Mr. Dinisio also testified that he worked as a busboy and a barista or a barista and a waiter during the same week. (Tr. at 28-29). In those weeks he got multiple checks, one each for a specific job category at a particular Gina La Fornarina location. (Tr. at 30). He did not receive overtime when his total hours in two job functions exceeded forty in a week, even if he performed both roles in the same location. (Tr. at 30-33).

The second employee, Walberto Ruiz, testified that he began working in 2010 at the Second Avenue location of Gina La Fornarina. (Tr. at 53-54). For the first few weeks, he worked only at that location, but was later assigned to additional locations. (Tr. at 54-55). Initially, he "helped out" perhaps twice a week at the Amsterdam Avenue location and was paid with a single check. (Tr. at 55-56). However, when Mr. Segota became the manager, he assigned Mr. Ruiz approximately three days each week to Second Avenue and three days to Amsterdam. (Tr. at 56-57). In total, Mr. Ruiz worked over fifty hours per week but received his pay in two checks that did not include any overtime premium. (Tr. at 57-58).

When the Madison Avenue location opened, Mr. Segota approached Mr. Ruiz about working there. (Tr. at 58). Mr. Ruiz asked if he could work in a single location so that he could accumulate overtime. (Tr. at 58). Mr. Segota responded that he

7

could only offer ten hours of overtime. (Tr. at 58). According to Mr. Ruiz, Mr. Segota told him,

> If I want more I can work in different location because he has to balance the hours . . . . So what I understand, that he didn't want me to work more than 50 hours in that location, like that he doesn't going to pay me more than 10 hours in overtime. Like that he would pay me regular rate in another location.

(Tr. at 58-59; see also Tr. at 62-63).

The testimony of these witnesses, or at least the implication that assignments were being manipulated to avoid the legal obligation to pay overtime, was challenged by Ms. Pedrignani. Prior to opening the Gina La Fornarina restaurants, Ms. Pedrignani had been employed as a manager at a number of restaurants in Manhattan. (Tr. a 122). In that role, she managed employees but did not set pay rates or handle payroll, though she was familiar with the general concept of overtime pay. (Tr. at 122-24).

When Ms. Pedrignani established Gina La Fornarina, she engaged counsel to advise her on her leasing arrangements, but she did not seek legal advice with respect to wage and hour requirements. (Tr. at 137, 143, 173). Then, when she opened multiple locations, each of which operated as a separate corporation, she assumed that it was appropriate to pay employees with separate checks, based on the work they performed at each specific location, just as it was appropriate not to combine her employees' hours with hours that they spent working for wholly

8

unrelated restaurants. (Tr. at 142). According to Ms. Pedrignani, her accountant confirmed this assumption. When she asked him, "Do I have to combine the hours?", he replied, "No, you have to pay everybody from each different location. How are we going to know how to do taxes at the end of the year? How are you going to know your [profit and loss]?" (Tr. at 157). However, she did not ask the accountant, or anyone else, whether the law required the aggregation of hours for overtime pay. (Tr. at 172-73).

Ms. Pedrignani acknowledged shifting employees from one location to another, but denied that the primary reason for doing so was to avoid paying overtime. Rather, she maintained that this was generally done because an employee was being trained or an employee was particularly good and she wanted him to bring his expertise to a different location. (Tr. at 144-46, 160). Similarly, Ms. Pedrignani conceded that when an employee worked in more than one job category during a week he received separate checks for the hours worked in each position, but she stated that this practice was necessitated by the complexities of paying an employee at two different rates and was consistent with his working in two different "departments." (Tr. at 161-63). Finally, Ms. Pedrignani acknowledged conducting meetings in the restaurants (Tr. at 131-32), but she denied that these conferences ever concerned limiting the amount of overtime, as alleged by Mr. Dionisio (Tr. at 132, 168).

There is nothing incredible about the testimony of either the employee witnesses or Ms. Pedrignani standing alone. Nor did the demeanor of any of these witnesses suggest that they were being untruthful. However, the objective evidence -- the defendants' own payroll records and the analysis of those records by the Secretary's investigator -- plainly corroborates the testimony of the employees and undermines the defendants' position.

First, the defendants regularly scheduled employees to work at more than one location in the same week, as the employee witnesses testified. The following chart lists the hourly employees (other than pizza chefs) who worked more than twenty-five weeks within the relevant period and who the Secretary contends are owed overtime wages; it shows the total number of weeks that they worked at one, two, or three locations:

| NAME | 1 LOCATION | 2 LOCATIONS | 3 LOCATIONS |
|---|---|---|---|
| Acho, A. | 0 | 28 | 5 |
| Bajrami, B. | 0 | 27 | 3 |
| Cardoso, S. | 0 | 37 | 1 |
| Dionisio, S. | 0 | 43 | 1 |
| Fierro, A. | 1 | 38 | 9 |
| Fuentes, V. | 2 | 23 | 24 |
| Gomez, C. | 0 | 25 | 1 |
| Gonzalez, M. | 19 | 9 | 0 |
| Gutierrez, P. | 2 | 49 | 0 |
| Irigoyen, R. | 0 | 46 | 2 |
| Martinez, M. | 0 | 43 | 6 |
| Miranda, R. | 42 | 1 | 0 |
| Ruiz, W. | 0 | 37 | 8 |
| Shala, B. | 0 | 24 | 5 |
| Velasquez, M. | 1 | 48 | 0 |

(Exh. P-1). As can be seen, a large number of employees worked at two or sometimes three locations in the same week. This contradicts Ms. Pedrignani's testimony that the shifting of workers was done merely for training purposes or to bring "best practices" from one location to another.

Second, the data show that, within a given week, employees in the same job category were often swapped between two locations. For example, during the week ending July 1, 2012, Timmy Dema, Sosimo Dionisio, Alfonso Fierro, and Oscar Moreno all performed dining room functions at both the Amsterdam and 2nd Avenue locations as follows:

| NAME | AMSTERDAM | 2nd AVENUE |
| --- | --- | --- |
| Dema, T. | 46.26 | 10.16 |
| Dionisio, S. | 11.07 | 48.09 |
| Fierro, A. | 5.28 | 55.90 |
| Moreno, O. | 51.45 | 6.48 |

(Exh. P-1 at 19, 22, 26, 78). Mr. Dema and Mr. Moreno worked the vast majority of their time at Amsterdam and the balance at 2nd Avenue, while Mr. Dionisio and Mr. Fierro did precisely the opposite. The defendants offer no plausible business explanation for switching employees between locations in this fashion. A strong inference can be drawn that this pattern is the consequence of an intentional effort to limit the hours that these employees worked at any one location during a week in order to avoid paying them overtime.

11

This inference is confirmed when one looks at the frequency with which assignments were divided between two locations when the employee was close to exceeding forty hours in a week at one of them. During the week of January 13, 2013, for example, Severo Cardoso worked forty-five hours at Amsterdam and twenty-one hours in the same role at Madison (Exh. P-1 at 17); Alfonso Fierro worked thirty-eight hours at Amsterdam and twenty-three hours at 2nd Avenue (Exh. P-1 at 27); Victor Fuentes worked thirty-six hours at 2nd Avenue and twenty-four hours at Amsterdam (Exh. P-1 at 31); Jesus German worked thirty-five hours at Amsterdam and twenty-six hours at 2nd Avenue (Exh. P-1 at 38); Pedro Gutierrez worked thirty-seven hours at 2nd Avenue and twelve hours at Amsterdam (Exh. P-1 at 47); Jorge Louis worked forty hours at 2nd Avenue and twenty-six hours at Amsterdam (Exh. P-1 at 59); and Besfort Shala worked thirty-seven hours at Amsterdam and sixteen hours at 2nd Avenue (Exh. P-1 at 99).

Furthermore, the defendants acknowledge that they failed to aggregate hours for overtime purposes when employees performed two different roles at the same location (JPTO, § VI, ¶ 7(b)), and this is borne out by the records (Tr. at 88). For instance, during the work week ending March 17, 2013, Elena Scherbak worked at the 2nd Avenue location for a total of forty-seven hours; however, she did not receive overtime because the defendants payed her separately for the 16.15 hours she worked in the office and the

12

30.85 hours she worked as a hostess. (Tr. at 77-79). Yet, the rationale that the defendants proffer for paying separately for work done at different locations -- that the locations were separate corporations with separate profit and loss structures -- simply does not apply to employees like Ms. Scherbak who worked at a single location.

Finally, the defendants' awareness of their legal responsibility to aggregate hours can be gleaned from the fact that they did so initially. Thus, when Carlos Temaj, for example, worked in two different capacities for the week ending July 1, 2012, he was paid in a single check and received overtime, yet when he worked the same pattern in the week ending September 30, 2012, his hours were divided according to job category, and he was deprived of overtime pay. (Tr. at 79-84).

In sum, the data support the Secretary's position that the defendants deliberately structured their payroll to avoid paying overtime by segregating hours according to restaurant location and job function. Whether this was done at Ms. Pedrignani's behest or by the manager, Mr. Segota, without her direct involvement, is immaterial.[4] The defendants took no reasonable steps to ascertain

---

[4] Although the employee witnesses testified that Mr. Segota explicitly told them that he was arranging the work schedule to avoid overtime, Mr. Segota did not testify at trial to rebut this. Accordingly, I may draw the inference that, if he had testified, he would not have disputed the employees' testimony. See Chevron Corp. v. Donziger, 974 F. Supp. 2d 362, 700 & n.161 (S.D.N.Y. 2014)

whether their practices were legal, despite knowing that they were required to pay overtime. At a minimum, their conduct was reckless and therefore willful.

Conclusion

For the reasons set forth above, and consistent with the prior rulings of the Court and stipulations of the parties, judgment shall be entered in favor of the Secretary and against the defendants, jointly and severally as follows:

1. $101,532.90 in unpaid overtime wages owed for the period June 16, 2012, through June 15, 2013;

2. $101,532.90 in liquidated damages for the period June 16, 2012, through June 15, 2013;

3. $45,101.42 in back wages previously awarded by the Court on summary judgment;

4. $45,101.42 in liquidated damages previously awarded by the Court on summary judgment;

5. $35,007.68 in overtime wages owed to the non-exempt salaried pizza chefs as stipulated in the Joint Pretrial Order, § VI(9);

6. $35,007.68 in liquidated damages owed to the non-exempt salaried pizza chefs as stipulated in the Joint Pretrial Order, § VI(9); and

7. Enjoining the defendants, their officers, agents, servants, employees, and those persons in active concert or participation with the defendants from violating the provisions of sections 6, 7, 11(c), 15(a)(3), and 15(a)(5) of the Fair Labor Standards Act.

---

(holding that "an adverse inference may be appropriate based on the failure to testify of someone closely allied with or related to a party, such as an employee").

The Clerk of Court shall enter judgment accordingly and close this case.

                             SO ORDERED.

                             *James C. Francis IV*
                             JAMES C. FRANCIS IV
                             UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          October 12, 2017

Copies transmitted this date:

Amy Tai, Esq.
James Wong, Esq.
U.S. Department of Labor
201 Varick St., Room 983
New York, NY 10014

Stephen D. Hans, Esq.
Stephen D. Hans & Associates, PC
45-18 Court Square, Suite 403
Long Island City, NY 11101